JUDGE LINDSAY
delivered the opinion oe the court.
Bridget Hannon, wbo was sued by the appellee Hall as Bridget Henning, was married to James Hannon, in the state of New York, about the year 1850. In 1864 she became the owner of, and had conveyed to her by Ward Pogue, a small lot *666 of ground in the city of Louisville. In July, 1867, she was abandoned by her husband, and he has not lived with her nor made any provision whatever for her support since that time. The testimony does not show that she has heard from him since their separation, and we are left in ignorance as to whether or not he still resides in Kentucky.
In 1871 Mrs. Hannon purchased from Hall lumber and building material to the amount of $127.94, which she used in repairing or adding to her house. He sued her as an unmarried woman, asking a' judgment for the amount of his debt, and for the enforcement of an alleged mechanic’s or material-man’s lien on her house and lot.
In March, 1872, Mrs. Hannon borrowed from Elizabeth Madden two hundred dollars, for which sum she executed her promissory note. She also mortgaged or attempted to mortgage her house and lot to secure the payment of the note. Madden sued to recover a judgment for her debt, and sought a foreclosure of her mortgage., Mrs. Hannon answered, and in each action pleaded and relied on her coverture, and also claimed that she was entitled to the benefit of the homestead exemption.
The vice-chancellor held her defenses insufficient, and rendered judgment on each claim, and directed a sale of her house and lot, first to satisfy Hall’s lien, and then the mortgage debt held by Madden. He also adjudged that she was not entitled to a homestead as against these debts. To reverse these judgments these appeals are prosecuted.
By the common law a married woman, whose husband was banished or who had abjured the realm, might acquire and hold property, and contract, and sue and be sued as a feme sole. It has been held that this doctrine prevails in Massachusetts, and the permanent removal from the state is treated as equivalent to abjuring the realm under the English rule. (15 Mass. 34; 4 Met. Mass. 478.) The Supreme Court of the United *667 States has recognized the same doctrine as prevailing in that part of the District of Columbia ceded by the state of Maryland. (1 Peters, 105.) The same rule has been acted on in South Carolina. (4 McCord, 88.) The Supreme Court of Illinois has gone even further, and held the law to be “that where the husband compels the wife to live separate from him, either by abandoning her or by forcing her by whatever means to leave him, and such separation is not merely temporary and capricious, but' permanent and without expectation of again living together, and the wife is unprovided for by the husband in such manner as is suited to their circumstances and condition in life, she may acquire property, control her person and acquisitions, and contract, sue and be sued in relation to them as a feme sole during the continuance of such condition.” (16 Ill. 278; 22 Ill. 390.)
Whether and to what extent this doctrine might be properly applied in this state, in the absence of statutory regulations upon the subject, we need not determine.
Section 4, article 2, chapter 47, Revised Statutes, provides that “ where the husband abandons the wife and lives separately and apart from her, or abandons her and leaves the state without making sufficient provision for her maintenance, or where he is confined in the penitentiary for an unexpired term of more than one year, the wife may by petition in chancery be empowered to use, enjoy, and sell for her own benefit any property she may. acquire thereafter, or may have acquired since the abandonment or leaving the state; to make contracts, sue and be sued as a single woman; and also to recover in her own name any property or debt to which she is entitled, or to which the husband is entitled in her right. She may also be empowered to sell and convey by her own deed any of her real estate or slaves freed from any claim of her husband.”
This statute provides for every possible contingency in *668 which it can become necessary for a married woman who has been deserted by her husband to acquire, hold, and dispose of property; to make contracts; and to sue and be sued as a feme sole.
Instead of the uncertain rule that would most likely result from the application of the English doctrine to the civil status of married women under our laws, it establishes a rule easily understood, of certain application, and the benefits of which may be speedily secured. It makes it the duty of the chancellor, and not of the married woman and the person with whom she may deal, to determine whether she should be relieved of the disabilities imposed, and deprived of the protection afforded by the law to femes covert.
The legislature intended to substitute this statute for the common law. It is not merely cumulative; it comprehends and includes the whole subject, and leaves no right or privilege necessary to be enjoyed or exercised by the abandoned wife to be deduced from or upheld by common-law principles or precedents. Its provisions are to be liberally construed, with a view to promote the object of its enactment, and when this is done there is no necessity for going outside of this reasonable application to obviate all the difficulties incident to the condition of a married woman who has been deserted by her husband and left without the necessary means of support.
We are referred to the case of Hackett & Callaghan v. Metcalfe (6 Bush, 352) as militating against these conclusions. Mrs. Metcalfe had not been deserted by her husband. The property she was adjudged to have charged was separate and not general estate. The deed under which she acquired title authorized her, with the consent of her trustee, to deal with this particular property as a feme sole. The distinction between the rights and powers of married women as to their general and their separate estates is very clearly recognized *669 and stated in the opinion in that case. We conceive that the doctrines therein announced and acted upon have no application in cases like the one under consideration.
In view of the fact that Mrs. Hannon had not availed herself of the remedy provided by statute, we are of opinion that she was, at the time the debts were contracted and the mortgage executed, delivered, and acknowledged, under the disabilities of coverture; that she is not personally bound by the contracts; and that the mortgage, not having been executed in the mode prescribed by the statute, is utterly void.
The judgments are reversed, and the causes remanded with instructions to dismiss the petitions.