85  423
e115 578

CASE 57—PETITION ORDINARY—MARCH 26.

## Needham v. Lou. & Nash. R. R. Co.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

1. DEGREE OF NEGLIGENCE A QUESTION FOR JURY.—Whether one has been guilty of negligence is a question not only of law, but of fact, and it is peculiarly the province of the jury to find the *degree* of negligence.

In this action under the statute for willful neglect resulting in the death of the plaintiff's husband, an employe of defendant, a special finding by the jury that the death was not caused by the willful neglect of the defendant was sufficient to authorize a verdict for defendant, even though the other findings were not sufficient to enable the court to determine whether there was *willful* neglect. Therefore, the plaintiff's motion to set aside the verdict and award a new trial, upon the ground that there was not a complete verdict, was properly overruled.

2. MASTER AND SERVANT.—As a general rule, if a servant knows that the machinery or premises provided for his use are unsafe, and without

Needham v. Lou. & Nash. R. R. Co.

objection continues to use them, and injury results to him, he can not hold the master responsible.

It was the habit of switchmen, in taking trains into a depot, to run along a path at the side of the track. In this path was a dry well partially covered with a car door. A switchman was killed by stepping into this hole and being thereby thrown between the moving cars. In this action by his widow against the railroad company for willful neglect, the jury found that the plaintiff's husband knew the condition of the premises, and had so known it for years. *Held*—That. the plaintiff is not entitled to recover.

3. ORDINARY CARE.—The court properly instructed the jury that "ordinary care is that degree which is exercised by ordinarily prudent persons under similar circumstances."

R. C. DAVIS AND MATT. O'DOHERTY FOR APPELLANT.

1. As the jury were unable to agree as to the *facts,* their conclusion of *law,* that Needham's death was not caused by the willful neglect of the defendant, is of no avail.

The question of negligence is a question of law for the court, to be determined upon the finding of facts by the jury. (L. & P. Canal Co. v. Murphy, 9 Bush, 533; Sullivan v. Louisville Bridge Co., 9 Bush, 91; Toledo, &c., R. R. Co. v. Goddard, 25 Ind., 193; Witty v C., O. & S. W. R. R. Co., 6 Ky. Law Rep., 327.)

The essential purpose of a special verdict is to present the *facts* upon which the court may pronounce the *law.* (Miller v. Shackleford,. 4 Dana, 274.)

2. The plaintiff had the right to have the legal standard of the duty of defendant's agents placed before the jury for their guidance while answering question No. 16, and the denial of this right was prejudicial.

Instruction No. 1 asked by plaintiff properly presented the nature and extent of the duties imposed by law upon defendant. (Lou. & Nash. R. R. Co. v. McCoy, 5 Ky. Law Rep., 402; Maysville, &c., R. R. Co. v. Herrick, 13 Bush, 127; Hough v. T. & P. R. R. Co., 100 U. S.; s. c. 1 Ky. Law Rep., 175; Ford v. Fitchburg R. R. Co., 110 Mass., 241.)

3. When willful negligence is made out in an action under the statute contributory negligence cannot be relied on as a defense. (L. C. & L. R. R. Co. v. Herrick's Adm'r, 13 Bush; L. & N. R. R. Co. v. Filburn's. Adm'r, 6 Bush, 24; Empire Coal & Mining Co. v. McIntosh, 6 Ky. Law Rep., 631 ; Thompson on Negligence, vol. 2, p. 1011.) Cited on this point in petition for rehearing: Claxton's Adm'r v. R. R., 13 Bush, 636; L. & N. R. R. Co. v. Mahoney, 7 Bush, 235; Digby v. Kenton Co., 8 Bush, 166; Memphis R. R. v. Jones, 2 Head, Tenn., 517.

Needham v. Lou. & Nash. R. R. Co.

The case of Louisville Bridge Co. v. Sullivan, 9 Bush, commented on.

· Even in the common law action for negligence, to which alone the· plea of contributory negligence is a defense, mere knowledge on the part of the person injured of the defect or danger by which he was injured does not preclude him from recovering damages. (Chicago,. &c., R. R. Co. v. Jackson, 55 Ill., 492; Reed ̇v. Northfield, 13 Pick.,. 94; Whittaker v. Baylston, 97 Mass., 273; Fox v. Sackett, 10 Allen,. 535; Frost v. Waltham, 12 Allen, 85; Horton v. Ipswich, 12 Cush.,. 488; Thompson on Neligence, vol. 2, p. 1015.) Cited in petition for· rehearing: Conroy v. Vulcan Iron Works, 62 Mo., 35; Patterson v. Pittsburg R. R. Co., 76 Pa. St., 393; Clark v. Holmes, Stoddard v. St. Louis R. R. Co., 65 Mo., 514; Keegan v. Kavanaugh, 62 Mo., 232;. Le Clair v. R. R., 20 Minn., 9-19.

4. The servants whom the master employs for the care and inspection of˙ his premises, machinery, etc., are not in any sense the fellow-servants; of those employed by him to use such machinery, premises, etc., within the rule which holds that the servant takes the risk of the negligence of his fellow-servants. (King v. R. R. Co. ,15 Cent. Law Journal, 367; Hough v. Texas Pacific R. R., 10 Otto (S. C.), 1 Ky. Law Rep., 171; Laning v. N. Y. C. R. R., 49 N. Y , 521; Thompson, on Neligence, vol. 2, p. 1032.)

5. The instruction defining ordinary care was erroneous. (L. & N. R. R. Co. v. McCoy, 5 Ky. Law Rep., 400.) Cited in petition for rehearing : Wabash R. R. Co. v. McDaniels, 107 U. S., 458; Hough v.. Texas Pacific R. R. Co., 100 U. S., 213; Nashville R. R. Co. v. Elliott, 1 Cold., 611; Toledo R. R., &c., v. Conroy, 68 Ill., 560; Thompson on· Negligence, vol. 2, p. 985.

6. (In petition for rehearing). While it will be presumed in favor of, or against, a general verdict, that the jury found every fact within the scope of the court's instructions necessary to its support, and which the evidence conduced to prove, a special verdict rests upon a different basis. It can not be aided by intendment. (Lee v. Campbell, 4 Port., Ala., 198; Tunnell v. Watson. 2 Manf., Va., 283; Sewell v. Gelden, 1 Ala., 52; Ham v. Field, 3 Litt. Select Cases, 376.)

LYTTLETON COOKE for appellee.

1. As to allegations necessary to constitute a cause of action: (Saunders· on Negligence, pp. 120-126; Priestly v. Fowler, 3 Mason & Welsby,. 1; Mad River & Lake Erie R. R. Co. v. Barber, 5 Ohio State, 568;. Griffiths v. London, etc., Dock Company, 20 Central Law Jour., 55; Sullivan's Administrator v. Louisville Bridge Co., 9 Bush, 89; Quaid v. Cornwall & Bro., 13 Bush, 604 ; Louisville & Portland Canal Co. v. Murphy's Administrator, 9 Bush, 533; Dillon v. Union Pacific R. R. Co., 3 Dillon, 319; Bell v. C., O. & S. W. R. R. Co., MS. Opinion, Superior Court of Kentucky, September 15, 1884.)

2. As to liability of master to servant for defective premises, etc., where the latter has equal knowledge of their condition : (Saunders on Negligence, pp. 120-126; Wharton on Negligence, section 214, p. 195; Shearman and Redfield on Negligence, 3d ed., section 94, p. 124; Thompson on Negligence, vol. 2, sec. —, pp. 971 and 1008; Perigo v. C., R. I. & P. R. R. Co., 52 Iowa, 276; Dillon v. Union Pacific R. R. Co., 3 Dillon, 319; Davis v. Detroit & Milwaukee R. R. Co., 20 Mich., 105; Crutchfield v. Richmond & Danville R. R. Co., 78 N. C., 300; Chicago, etc., R. R. Co. v. Clark, 15 American and English R. R. Cases, 261; St. Louis and South Eastern R. R. Co. v. Brintz, 72 Ill., 257, Chicago, etc., R. R. Co. v. Ward, 61 Ill., 130; Galveston, etc., R. R. Co. v. Lempe, 11 American and English R. R. Cases, 201; Sweeney v. Central Pacific R. R. Co., 57 Cal., 15; Whitman v. Wisconsin, etc., R. R. Co., 12 American and English R. R. Cases, 214; Lake Shore, etc., R. R. Co. v. McCormick, 74 Ind., 440; Pittsburg, etc., R. R. Co. v. Sentmeyer, 92 Pa. St., 276; Ballou v. Chicago, etc., R. R. Co., 5 American and English R. R. Cases, 480; Sullivan v. Louisville Bridge Co., 9 Bush, 81; Quaid v. Cornwall & Bro., 13 Bush, 604; Ives v. Avery & Sons, MS. Opinion, Kentucky Court of Appeals, September 13, 1884; Jones' Administrator v. L. & N. R. R. Co., 6 Ky. Law Reporter, 694.)

3. As to right and duty of court to give peremptory instructions where plaintiff's evidence fails to make out a case of willful negligence: (Louisville & Portland Canal Co. v. Murphy's Administrator, 9 Bush, 533; Dolfinger & Co. v. Fishback, 12 Bush, 480; Jones' Administrator v. L. & N. R. R. Co., 6 Ky. Law Reporter, 698-9.)

4. Court not bound to submit questions for special verdicts in the words in which they are proposed: (Weams v. Louisville City Railway Co , 80 Ky. Reports, 420.)

5. Discretionary with court to require both general and special verdict, and as to special verdicts generally: Witty v. Chesapeake & Ohio, etc , R. R. Co., 6 Ky. Law Reporter, 321; Empire Coal and Mining Co. v. McIntosh, 6 Ky. Law Rep., 631; Paducah & Elizabethtown R. R. Co. v. Letcher, 5 Ky. Law Rep., 153; Paducah & Elizabethtown R. R. Co. v. McLean, 5 Ky. Law Rep., 334; Buckner v. Fleming, 5 Ky. Law Rep., 613.)

6. All questions submitted for finding of special verdicts not necessary to be answered to authorize court to give judgment, provided the controlling facts are found by the jury: (Alexander v. L. & N. R. R. Co., MS. Opinion, Ky. Court of Appeals, February 13, 1886; Adams v. L. & N. R. R. Co., 6 Ky. Law Rep., 686.)

7. Parties have no right to complain of erroneous instructions given at their own instance: (Clift v. Stockdon, 4 Littell, 217.)

8. Province of jury to decide the degree of negligence where the evidence is conflicting: (Johnson v. Castleman, 2 Dana, 377; Lou., Cin. & Lex.

Needham v. Lou. & Nash. R. R. Co.

R. R. Co. v. Mahoney, 7 Bush, 237; L. & N. R. R. Co. v. Collins, 2 Duvall, 115; Claxton's Administrator v. Lexington & Big Sandy R. R. Co., 13 Bush, 635.)

2. As to what facts necessary to constitute willful negligence: (L. & N. R. R. Co. v. McCoy, 81 Ky. Reports, 403; Jones' Administrator v. L. & N. R. R. Co., 6 Ky. Law Rep., 694; L. & N. R. R. Co. v. Connoly, MS. Opinion, Ky. Court of Appeals, November 3, 1885.)

H. W. BRUCE on same side.

The jury understanding the meaning of willful neglect as defined by the court to it by instruction No. 1, has found that Needham's life was not lost by the willful neglect of any of appellee's employes, and there being no *fact* found by the jury inconsistent with this finding, which is, in effect, a general verdict, it is conclusive of the case.

WM. LINDSAY, of counsel on same side.

JUDGE HOLT delivered the opinion of the court.

John Needham while in the employ of the appellee, the Louisville and Nashville Railroad Company, as a switchman, and when engaged in the night time, in running one of its trains into its freight depot at Louisville, Kentucky, was thrown between and killed by being run over by the cars. It was the habit of the switchmen, in taking the trains into the depot, to either ride on the cars or run along a path at the side of the track. In this path was a hole or dry well, partially filled with *debris*, and covered over with a car door. The well had been in this condition for a long time, and its size and depth is variously stated by the witnesses. Its existence and condition, as well as that of the premises, was well known to the deceased, he having been in the employ of the company for several years. There is evidence tending to show that the hole was entirely covered by the door, and also testimony to the effect that enough of it was open at one side to admit a man's foot, and that there was also a hole in the door sufficient for this purpose.

Near the entrance to the depot, and near the track, was a brick column. It is claimed upon the one side that the deceased lost his life when running along in the pathway at the side of the train by stepping into the hole, and being thereby thrown under the train; while upon the other, it is said that, as he was riding upon a ladder on the side of the car he so carelessly swung his body out that he came in contact with the pillar, and was thereby knocked under the car.

But one witness professes to have seen the killing, and he testifies that it occurred as last stated. All of the jury, however, did not believe his version of the transaction, as they did not find that the death was caused in the one way or the other.

The widow brought this action under section 3, chapter 57, of the General Statutes, to recover damages for the death of her husband, through the *willful* neglect of the company or its servants. The petition avers that this neglect not only consisted in leaving the well in the pathway, but in failing to light the entrance to the depot.

The jury were directed to find a special verdict. It is as follows:

Q. 1. Was there or not, a pathway at or near the place where John Needham was killed, designed by defendant for the use of its employes, switchmen and others, and used by them while in defendant's service?

A. We say, there was.

Q. 2. Was there a hole in said pathway?

A. We say, there was.

Q. 3. Was said hole, at and before the time of said Needham's death, covered over with a car door?

A. We say, yes, except a small hole on the east side.

Q. 4. Was there any holes in said car door or covering, or alongside the same, in the said pathway, sufficient in size to admit a man's foot, or cause him, when passing along said pathway, to stumble and fall, or to be thrown to the ground?

A. We say, yes.

Q. 5. If in answer to No. 4, they say that, at and before the time named therein, there were any holes in said car door, or alongside the same, in said pathway, of the size and description mentioned, then they will say whether or not the existence of such holes were, before the day the said Needham was killed, known to defendant's employes in charge of its tracks and pathway in the depot where he was at work, or by the use of proper diligence on their part could have been so known to them?

A. We say, yes.

Q. 6. Was the pathway referred to in question No. 1 (if there was such a one), at and before the death of Needham, in a reasonably safe and good condition, and reasonably fit for use by said Needham and others in like service?

A. We say, we of the jury are unable to agree on an answer to this question.

Q. 7. Was the condition of said pathway, before the death of Needham, known to defendant's employes in charge of the depot and the tracks or pathways therein, or could they by use of proper diligence have known its condition?

A. We say, yes.

Q. 8. Did defendant or its employes, before and at

the time of Needham's death, keep a light at the entrance of said freight depot?

A. In answer to question 8, we of the jury say, no.

Q. 8½. Was the keeping of such lights at such entrance necessary for the safety of Needham and other switchmen engaged at night on work about said depot?

A. We say, no.

Q. 9. Did defendant or its employes in charge of said depot before the death of Needham know that such light was so necessary, or could they by the use of ordinary diligence have known it?

A. We say, they did not know that it was necessary; could have known it if it was necessary.

Q. 10. Did said John Needham, at and before the time when killed, know the condition of the defendant's depot and premises at and near the place where he received his injuries which resulted in his death; and if so, how long had he known their condition?

A. He did know it, and must have known it for several years.

Q. 11. At the time when said Needham fell between or under the cars and received the injuries which caused his death, was he standing or walking on the ground or pathway near the track; or was he riding on the side of a freight car?

A. We of the jury are unable to agree in the answer to this question?

Q. 12. Did said Needham lose his life because of a fall occasioned by the hole named in question 2, and occurring as he, said Needham, was walking or passing on the ground along the pathway near the track? Or did he lose his life by falling or being knocked off the

side of a freight car, in consequence of striking against or coming in contact with a brick wall or column at the south end of defendant's freight depot?

A. We say, we of the jury are unable to agree in the answer to this question.

Q. 13. Was the car door over said hole, if there was such door over it, sufficiently heavy to keep it in place, without being otherwise fastened to the ground?

A. We say, yes, it was.

Q. 14. Was Needham, on the evening before his death, furnished with a lantern to enable him to see how to discharge his duties?

A. We say we answer, he was.

Q. 15. Was the said freight depot lighted with gas when the said Needham was killed? If so, how many gas lights were then burning therein?

A. We say we answer thirty-two lights were burning.

Q. 16. Was the death of said Needham caused by the willful negligence of defendant's employes, or any of said employes?

A. We say we answer, no.

Q. 17. If they answer question number 16 in the affirmative, then they will say in what acts or act of omission or commission did such negligence consist?

A. We say—

Q. 17½. Could the said John Needham have avoided the injuries which caused his death by the exercise of ordinary care and diligence on his part?

A. We say, we of the jury are unable to agree in an answer to this question.

Q. 18. If they say, in answer to question 16, that

the death of Needham was caused by the willful neg-
ligence of the employes of defendant, then they will,
in answer to this, say what sum in damages plaintiff
should recover of defendant because of said death?

A. We say—

The company moved for a judgment upon it in its
favor, while the appellant, holding that it was not a
complete verdict or sufficient to authorize a judgment,
moved the court to set it aside and grant her a new
trial. She now complains of the action of the court in
rendering a judgment for the appellee.

It is true that the jury were unable to agree as to
whether Needham, when he lost his life, was walking
along the path or riding upon the cars; or whether he
lost his life by falling into the hole or by being
knocked off the side of the car; but they did find that
it was not necessary to have any more light at the
depot entrance than the company had provided; that
the deceased had a lantern to enable him to see how
to perform his duties; that he knew and had known
for several years the condition of the premises at the
place where he was killed, *and that his death was not
caused by the willful neglect of the company.*

It is urged that the last finding is but the inference
or conclusion of the jury. The issue, however, was
as to the existence of *willful* neglect. Whether one
has been guilty of neglect is not only a question of
law but of fact; and it is peculiarly the province of
the jury to find the *degree* of it.

In the case of the Louisville and Nashville Railroad
Company v. Collins, 2 Duvall, 115, it is said: "After
full and careful consideration, we are satisfied that

the engineer was guilty of some negligence. The *degree* of it was a question of fact, which, on such apparently conflicting testimony, *the jury had a right to decide.*"

Again: in L., C. & L. R. R. Co. v. Mahoney's Administrator, 7 Bush, 237: "Whether these and other facts developed on the trial sustained the charge of willful neglect, it was the peculiar province of the jury to determine."

And in Claxton's Administrator v. L. & B. S. R. R. Company, 13 Bush, 642, the court said: "Under such a state of proof it was for the jury, and not for the court, to determine whether the company's negligence was willful."

Suppose the jury had found that Needham lost his life by stepping into the hole, and being thereby thrown under the car; yet it would have been the province of the jury to have said whether the company should be charged with willful neglect. *This was the issue.* If there had been no special verdict, but a general one, the jury would have found for the company, although they may have believed that the death occurred as the appellant claims, inasmuch as they found the non-existence of willful neglect upon the part of the company.

If, however, the degree of negligence were a question of law merely, yet not only the jury has said that there was no willful neglect, but the court has passed upon the question by affirming the finding of the jury by its judgment.

Again: it is the duty of the master to use ordinary care in providing for the use of the servant safe ma-

chinery and premises in safe condition. He is not,. however, an insurer; and if the servant knows that, they are unsafe, and without objection continues to use them, and injury results to him, he can not hold the master responsible. There may be cases where he has the right to rely upon the superior knowledge or means of knowledge of the master, but the above is the general rule. In this case the jury found that Needham knew the condition of the premises, and had so known them for years; and if the question of liability had been submitted to the court alone, or had properly belonged to it alone, a like judgment would probably have resulted. We perceive no error in the instructions which were given to the jury.

They were told *inter alia :* "Ordinary care is that degree which is exercised by ordinarily prudent persons under similar circumstances."

This instruction expresses the law in plain and concise terms; and is not, in our opinion, open to objection.

Judgment affirmed.

----

To a petition for rehearing filed by appellant, Judge HOLT delivered the following response of the court:

Counsel for the appellant understand that the opinion in this case takes the broad ground that when in an action for the death of the servant through the willful neglect of the master under section 3, chapter 57 of the General Statutes, such neglect has been shown, its effect may be avoided by evidence of contributory neglect upon the part of the deceased.

It must not, however, be so understood. It was not intended to nor do we think it admits of such an interpretation.

The language employed in that portion of it which speaks of the duty of the master to the servant in providing for his use machinery and premises reasonably safe, and the legal effect of the use of them by him with knowledge of and without complaint of their unfitness, was used in discussing the question of the existence or non-existence of *willful* neglect.

Upon a reconsideration of the case and a careful reading of the able petition for a rehearing, we feel constrained to adhere to our former conclusion.

The petition for a rehearing is overruled.