CASE 55—PETITION ORDINARY—DECEMBER 10.

89   367
o113  963

# Eskridge's Ex'rs v. The Cincinnati, New Orleans & Texas Pacific Railway Company.

## APPEAL FROM GRANT CIRCUIT COURT.

1. RAILROADS—FAILURE TO GIVE SIGNALS.—It is the imperative duty of those in charge of a railroad train to give timely and sufficient warning of its approach to the crossing of a public road, and a failure to perform this duty is negligence, the degree of which depends upon the facts and circumstances of each case, to be determined by the jury.

2. RUNNING TRAIN AT RAPID SPEED IN TOWN.—To run a train at a rapid rate of speed across a public street in a city or town is *prima facie* willful negligence.

3. CONTRIBUTORY NEGLIGENCE NO DEFENSE TO WILLFUL NEGLIGENCE.—In an action to recover damages for the loss of life by the alleged willful negligence of the defendant, the defendant is liable when willful negligence is established, no matter how negligently the person killed may have acted.

4. WILLFUL NEGLIGENCE DEFINED.—Willful negligence, in the meaning of the statute, is such conduct as evidences reckless indifference to the safety of the public, or is an intentional failure to perform a plain and manifest duty, in the performance of which the public and the party injured had an interest.

5. PEREMPTORY INSTRUCTIONS—QUESTIONS FOR JURY.—To authorize the court to give a peremptory instruction to find for the defendant, it is not enough that the evidence is, in the opinion of the court, such that possibly a new trial should be awarded in case of a verdict for the plaintiff. If there be evidence conducing to show a right of recovery, however contradictory it may be, or whatever the preponderance, in the court's opinion, may be, the plaintiff may insist on a verdict of the jury.

In this action against a railrord company, in which the failure of those in charge of a train to give a signal of approach to a public crossing was relied upon to show willful negligence, there being testimony tending to show that no signal was given, the court erred in instructing the jury to find for defendant, as it was a question for the jury whether there was a failure to give the signal, and if so, whether such failure constituted willful negligence as to a traveler on a public highway about to cross the railroad with a team. And if they should find that the negligence was not willful,

368 KENTUCKY REPORTS. [Vol. 89.

Eskridge's Ex'rs v. The Cincinnati, New Orleans & Texas Pacific Ry. Co.

then it was a question for them whether, under all the circumstances, the decedent was guilty of contributory neglect.

6. PRESUMPTIONS.—The court had no right to presume that the decedent recklessly or carelessly imperiled his own life, or entered upon the track, knowing of the train's approach.

7. EVIDENCE.—Where the question is, whether those in charge of a railroad train gave a signal of its approach to a public crossing, it is not competent to show that other trains did not give the signal as they approached that place, or that trains did not usually do so.

8. AMENDMENT OF PETITION DURING TRIAL.—It was too late, after the jury had been sworn, and some of the witnesses had testified, to file an amended petition, alleging that the injury complained of was caused by the negligence of those in charge of the "south bound accommodation train," the issue having been made up and partly tried as to the negligence of those in charge of the "south bound express train."

COLLINS & FENLEY FOR APPELLANT.

1. It was competent for plaintiff to prove that it was the custom of trains not to whistle as they approached the crossing where the injury occurred. (Field v. N. Y. C. R. Co., 22 N. Y., 339; Ky. C. R. Co. v. Barrow, 6 Ky. Law Rep., 243.)

2. It was competent for plaintiff to show by one of the witnesses that if a signal had been given he could have heard it.

3. The court erred in striking out that part of the amended petition which states particularly the facts constituting willful negligence. This statement of facts was necessary to show the character of the negligence, and to distinguish it from ordinary negligence. (9 Bush, 728.)

4. The court erred in giving a peremptory instruction to find for defendant.

The failure of the agent in charge of a train to give the usual notice of the approach of the train to a public crossing is negligence; and where the crossing is an extraordinarily dangerous one, the failure to give such notice is willful negligence. (Shackleford's Adm'r v. L. & N. R. Co., 7 Ky. Law Rep., 732; L., C. & L. R. Co. v. Goetz's Adm'r, 79 Ky., 446; P. & M. R. Co. v. Hoehl, 12 Bush, 45; Claxton's Adm'r v. L. & B. S. R. Co., 13 Bush, 642; L. & N. R. Co. v. Commonwealth, 80 Ky., 143; Gastineau's Case, 83 Ky., 119.)

Where there is any evidence conducing to show a right of recovery, the court should not take the case from the jury. (Shay v. R. & L. T. P. Co., 1 Bush, 109; Stephens v. Brooks, 2 B. M., 140; Thompson v. Thompson, 17 B. M, 27; Buford v. L. & N. R. Co., 82 Ky., 286; Goetz's case, 79 Ky., 447; Spence v. Ill. Cent. R. Co., 29 Ill., 60.)

There may be proper diligence without stopping and looking to see whether a train is approaching. (Phil. & Tren. R. Co. v. Hagan, 47 Penn., 246.)

Eskridge's Ex'rs v. The Cincinnati, New Orleans & Texas Pacific Ry. Co.

If the neglect was willful, contributory neglect will not excuse appellee. (L. & N. R. Co. v. Mackoy, 81, Ky., 403.)

The degree of care was not a question for the court, but for the jury. (Needham v. L. & N. R. Co., 9 Ky. Law Rep., 61.)

C. B. SIMRALL FOR APPELLEE.

1. Evidence by which facts relied on are proved should not be stated in the petition. (Bentley v. Bustard, 16 B. Mon., 686; L. & P. Canal Co. v. Murphy, 9 Bush, 527; Barret v. Goldshaw, 12 Bush, 597.)

2. Opinion evidence is incompetent where the jury themselves are to judge the fact. (Marcott v. M., H. & O. R. Co., 8., Am. and Eng. R'y Cases, 306.)

3. In Kentucky a peremptory instruction is proper where plaintiff fails to make out his case. (Thompson v. Thompson, 17 B. Mon., 22; Jarman v. Howard et al., 3 Marsh., 384; Shay v. R. & L. T. Co., 1 Bush, 109; United Society of Shakers v. Underwood, 11 Bush, 276; Pollock's Adm'r v. Louisville, 12 Bush, 221; Wilsey v. L. & N. R. R., 83 Ky., 512.)

Some cases say such instruction is proper where there is no evidence "tending to establish the matter in issue." (Buford v. L. & N. R. R., 82 Ky., 286.)

Other cases say the instruction is proper where there is no evidence "conducing to show the right of recovery." (Stephens v. Brooks, 2 B. M., 140; Shay v. R. & L. T. Co., 1 Bush, 108.)

"Evidence tending to prove" means more than "scintilla of evidence." (Bartelott v. International Bank, 119 Ills., 259, per Schofield, J.)

CHIEF JUSTICE LEWIS DELIVERED THE OPINION OF THE COURT.

The life of W. K. Eskridge was destroyed in Grant county under the following circumstances: He was, in February, 1887, returning from Dryridge, on the east side, to his residence, about one and a half miles west of the railroad of appellee, driving a team of four horses, harnessed, but not hitched to a vehicle, he being astride the saddle-horse, and about the time the leaders had reached or were very near to the track, at what is called Conrad's crossing of a county road, a train of cars passed rapidly southward, frightening them so much he lost control of the team, and fell or

was thrown to the ground, and, from injuries thereby received, died in a few days; whereupon, this action was instituted by his executor to recover damages therefor, but upon conclusion of the plaintiff's evidence on the trial in the lower court a peremptory instruction was given, and verdict was rendered for the defendant.

In the original petition it was stated the injury was caused by negligence of those in charge of the south-bound accommodation train, but in an amended petition filed before answer, it was stated to have been caused by willful negligence of servants of appellee in charge of the south-bound express train, which passed before the other; and one of the alleged errors is refusal of the court to permit the plaintiff to file a second amended petition, in which it was stated, as in the original, the south-bound accommodation train caused the injury.

As motion to file the last-named pleading was made after the jury was sworn and some of the witnesses had testified, we think the court properly overruled it, and also properly sustained objection to testimony of two passengers on the accommodation train, who, it was averred, would state they heard no whistle or bell when it approached Conrad's crossing; for the issue having been made up and partly tried as to negligence of those in charge of the express train, it would have been obviously prejudicial to the defendant to allow it then changed.

Certain witnesses having stated they did not hear any signal of the approaching train, it was the province of the jury to judge from the facts before them

whether such witnesses could have heard the signal if it had been given, and the court properly refused to permit the witnesses to give their opinion on the subject, for it was no more than an expression of opinion. The plaintiff offered to prove by a witness that she, the witness, noticed the trains very closely that passed the crossing the day after the testator was injured for the purpose of ascertaining whether they gave the signal as they approached that place, and, of the large number passing, only three whistled, and also that the trains did not usually do so.

It was held by this court in an action to recover dam ages of a railroad company for destruction of fences, grass and other property along the line of the road, alleged to have been ignited by sparks of fire escaping from the chimney of a particular locomotive, that it was competent, in the absence of direct evidence as to origin of the fire, and in order to thus show it, to prove the usual condition of the defendant's engines. (Ky. Cen. R. Co. v. Barrow, 6 Ky. Law Rep., 240.)

The theory upon which such testimony is admissible is, that "the business of running trains on a railroad supposes a unity of management and a general similarity in the fashion of the engines and character of the operations" (Shelden v. Hudson R. R. Co., 14 N. Y., 218); for every railroad company is bound to have and use, in operating its trains, machinery scientifically constructed, and best adapted to prevent injury to persons and property. Besides, there is a statute of this State which requires all railroad companies to place on top of each locomotive chimney a screen or fender for the special purpose of preventing

escape of sparks of fire while the train is in motion. As the duty is thus imposed directly upon each company, and its chief officers are required to uniformly construct and adjust locomotives so as to prevent escape of sparks of fire, it was held competent in that case, when the question was made as to the condition in that respect of the particular locomotive alleged to have caused the injury, to show a failure generally to comply with the law. But whether a signal was given at approach of a train to a station or crossing on any particular occasion is a question of fact that can not be affected one way or another by showing the conduct of subordinate officers or servants in charge of some other train or trains who may or may not be mindful of their duty.

The well-established rule in this State in determining whether the court ought or not to give a peremptory instruction is, that it is not enough the evidence be, in the opinion of the court, such that possibly a new trial should be awarded in case of verdict in favor of the plaintiff, on the ground it would be against the weight of evidence; but if there be evidence conducing to show a right of recovery, however contradictory it may seem to the court to be, or wherever the preponderance, in the court's opinion, may be, the plaintiff may insist on a verdict of the jury.

It appears that the testator stopped on his way at the point the county road intersects the Lexington and Cincinnati Turnpike, about one hundred and fifteen feet from the railroad track at Conrad's crossing, and with one or two persons at work in a field adjacent to the turnpike, conversed for a short time, and he

was in full view of both of them when his team became frightened at the passing train and he was injured. Both of those persons testified as witnesses that they did not hear any signal of the approach of the train given, though one of them stated he discovered the train by the smoke arising from the locomotive, and warned the deceased it was coming, to look out, though too late. It is not necessary to refer in detail to the evidence of the other five witnesses who testified on the subject, three of whom, though within the limit of distance at which a locomotive whistle may be heard, testified they did not hear any signal given upon approach of the train to Conrad's crossing. The other two testified they heard a whistle, but are not positive it was at the crossing.

It appears from the testimony of a witness who took some pains to ascertain the distances and topographical features of the ground between the turnpike and railroad, that to a person passing on horseback along the county road, which is called the Baton Rouge road, towards the crossing, from the point of intersection to a point within ninety feet of the railroad, the train was in full view for a distance of three thousand five hundred feet northward; between ninety and fifty feet from the track it could not be seen; at fifty feet, it could be seen for the distance of three hundred and fifty feet; and at thirty-seven feet, it could be seen one thousand five hundred feet; but between that point and the track, it could not be seen. Though it may be that the deceased might, by using his eyes, have seen the approaching train, or that, adopting the theory of appellee's counsel, he did see it, but trusted to the

docility of his horses, still, whether, if at all, he so far contributed to the injury by his own negligence that but for it the injury would not have happened, was exclusively within the province of the jury to determine; for the court had no right to "presume that the decedent recklessly or carelessly imperiled his own life, or entered upon the track knowing of the train's approach." (Louisville, &c., R. Co. v. Goetz, 79 Ky, 442.) And without such presumption, conclusion of contributory neglect to the degree necessary to acquit the defendant of all liability for its failure to give the signal, if it did so fail, can not be arrived at under the circumstances of this case with such certainty as to justify the court in giving a peremptory instruction. Moreover, it is settled by this court that, when willful negligence is established, the defendant is liable, no matter how negligently the person killed may have acted. (Claxton v. Lexington, &c., R. Co., 13 Bush, 636.) And whether appellee's servants in charge of the train that caused the death of appellant's testator were guilty of such negligence is a question for the jury in a case like this to determine under the proof. (Same case, and 79 Ky., 442.)

Willful negligence, in the meaning of the statute as heretofore defined, is where the "conduct of a party in fault was such as to evidence reckless indifference to the safety of the public, or an intentional failure to perform a plain and manifest duty, in the performance of which the public and the party injured had an interest." (13 Bush, 637.)

To run a train at a rapid rate of speed across a pub-

lic street in a city or town without a signal to warn persons of its approach is *prima facie* willful negligence, because the probability of destroying life or doing serious personal injury is very great. There is less probability of fatal results from crossing a country road not much traveled; but it is the policy of the law, as has been often held by this court, to treat the duty of those in charge of a railroad train to give timely and sufficient warning of its approach to the crossing of a public road as imperative, and a failure to perform it is, in legal contemplation, negligence, the degree of which depends upon the facts and circumstances of each case, to be determined by the jury, and if they find it to be willful negligence, then contributory negligence by a person whose life is destroyed affords no defense or excuse in law.

Wherefore, the judgment is reversed, and cause remanded for a new trial in accordance with this opinion.