## Louisville & Nashville Railway Company, et al. v. Copley.

(Decided October 16, 1917.)

### Appeal from Letcher Circuit Court.

1. Carriers—Trespassers—Passengers.—Although one contemplating a journey upon a train may be a trespasser if he attempts to board the train while it is in motion, and, if injured in doing so, through no contributing acts of the railroad company or any of its agents and servants, he could not recover therefor, still, if such one succeeds in getting safely upon the car and is thrown from it by the flagman, or anyone in charge of the train, negligently running against him and knocking him therefrom, resulting in his injuries, the railroad company would be liable; for, if a trespasser, the company should exercise ordinary care toward him, after discovering his situation, to prevent injuring him, and if a passenger, the company owes him the highest degree of care.

2. Pleading—Amendments.—To charge that an agent or servant wilfully did the acts complained of without saying that they were maliciously done is tantamount to saying that the servant was grossly negligent, and where the original pleading charged gross negligence, it was not an abuse of discretion for the court, after

the evidence was in, to permit an amendment to be filed alleging that the acts were willfully committed.

3. Jury—Summoning Jurors.—Where a court at a regular term drew from the wheel a petit jury for the succeeding regular term in the manner provided by section 2243 of the Kentucky Statutes, and at the same time and in the same manner drew a petit jury for a special term then called for an intervening time between that and the next regular term, it was not necessary, under the provisions of section 2244 of the Kentucky Statutes, to draw a jury during the special term for the following regular term. In such case the protecting provisions of the statute for the safeguarding of the integrity of the jury are adhered to and fully complied with.

4. Jury—Summoning and Discharge of.—Under the provisions of section 2261 of the Kentucky Statutes, the court may discharge the petit jury after one week's service, but is not compelled to do so, and if he should fail this fact will be no ground for objection to the panel continuing to serve.

5. Damages—Inadequate and Excessive Damages.—The plaintiff was a healthy, strong man, 38 years of age, and earning four dollars per day. The complained of injuries resulted in the loss of his left leg just above the knee. Held that the verdict in his favor for $12,000.00 as compensatory damages is not excessive.

SÁMUEL M. WILSON, BENJAMIN D. WARFIELD, JAMES J. DONOHUE, MORGAN & HARVIE and D. I. DAY for appellants.

BLAIR & HAWK and WILLIAM DEARING for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellee (plaintiff below), on August 30, 1914, at about one o'clock p. m., was thrown under a passenger train operated by appellants (defendants below) in the town of Neon, Letcher county, Kentucky, and his left leg was so mangled and crushed by the wheels of the train running over it that it had to be and was amputated just above the knee; to recover damages for his injuries he brought this suit against both defendants, Louisville & Nashville Railway Company and Lexington & Eastern Railway Company. The trial resulted in a verdict in his favor for $12,000.00, upon which judgment was rendered, and to correct what are claimed to be prejudicial errors occurring at and during the trial, the defendants prosecute this appeal.

The petition was amended before the trial, and a second amendment was filed over defendants' objection at the close of all the evidence, and of which serious complaint is made, and which we will consider later in this

opinion. The facts relied upon as constituting negligence of the defendants and forming the basis for recovery are substantially the same in the first amendment as in the original petition, except the latter states them somewhat more fully, and in that pleading they are thus stated:

"That at Neon, in Letcher county, Kentucky, on defendants' road, there is a Y upon which the trains go to turn, and that while trains are upon this Y it is customary for passengers to alight and to board said trains, and that the same was known to the defendant, its agents and employees, and that the alighting and boarding of said trains on this Y was permitted by the defendants, its agents and employees, and that on the above date, to-wit, August 30, 1914, while the train was on said Y and was proceeding very slowly on same, the plaintiff, with the intention of becoming a passenger over said road to Whitesburg, was boarding said train and had caught hold of the grab irons on said car and had his foot on the first step of said car, the flagman, an employee and agent of defendants, with gross carelessness and negligence, jumped upon the first step with much force, and took hold of the grab irons, and in so doing the flagman, an employee of defendants, forced the plaintiff loose from the grab irons and caused him to fall off and under the train, and that the train ran over the left leg of plaintiff and cut same off just above the knee," etc.

There are other facts stated supposed by the pleader to constitute negligence, such as the failure to provide a place for getting on trains at Neon, etc., but which we do not deem relevant under the facts of this case, and which might here be dismissed without further notice.

The usual answer containing a denial and a plea of contributory negligence was filed, followed by a reply denying the affirmative pleas contained in the answer, thus completing the issues.

The points pressed by appellants' counsel as grounds for reversal are, (1) error in the court in permitting the second amended petition to be filed over defendats' objections at the close of the evidence, conforming, as plaintiff contended, the pleadings to the proof; (2) error in refusing to sustain defendants' challenge to the entire panel of the jury and to discharge it and continue the case, or empanel another jury drawn from the wheel; (3) error in overruling the demurrers filed to the petition and its amendments; (4) error in overruling the motion for a peremptory instruction to find for the de-

fendants made at the close of plaintiff's testimony and at the close of all the testimony; and (5) error in the giving and refusing of instructions.

Considering these objections in the order named, the complained of amended petition is short, containing only these allegations: "That while the plaintiff was on the steps of the defendants' car and holding both grab irons, the flagman, an employee and agent of the defendants, willfully and with much force pushed him from the said steps and caused him to fall to the ground and under the train and injured, as heretofore stated." As to whether the court erred in permitting that amendment to be filed is dependent altogether upon the further question of whether it materially changed the cause of action.

It will be seen that the original pleading charged that the flagman "with gross carelessness and negligence jumped upon the first step (of the coach) with much force . . . and forced the plaintiff loose from the grab irons." Further along in the pleading it is alleged that the flagman whose acts are complained of saw the plaintiff's position, or could have seen him by the exercise of reasonable diligence, but, notwithstanding, he committed the acts complained of, resulting in the plaintiff's injury. In the second amendment so seriously objected to, the language used is that the flagman "willfully and with much force pushed him (plaintiff) from the said steps," thereby causing him to fall and sustain the injuries. In the one pleading the acts of the flagman are charged to have been *grossly* committed, and in the other to have been committed "willfully and with much force." So we are brought face to face with the question as to whether there is any material difference in the two allegations.

Under the general statutes, chapter 57, section 3, in force in this state before the adoption of the present constitution, and the enactment of section 6 of the Kentucky Statutes, recovery for the negligent killing of another (not an employee) might be had for the benefit of any widow or child left by the deceased, and punitive damages might be recovered if the negligence was "willful."

Section 241 of our present constitution provides for the recovery of damages for the death of any person produced by negligence or wrongful act, and superseded the cause of action given by the general statutes, *supra*. The section of the constitution makes no mention of any

degrees of negligence, simply providing for cause of action when the death is the result of any character of negligence. Even under the old statute the phrase "willful neglect" was defined by this court in the case of Cincinnati, &c., R. Co. v. Privitt's Admr., 92 Ky. 223, to signify and mean "a reckless indifference to or intentional disregard of the safety of others." To the same effect are the cases of Eskridge's Ex'r v. C., N. O. & T. P. Ry. Co., 89 Ky. 367; Collins v. C., N. O. & T. P. Ry. Co., 13 Ky. Law Rep. 670; and Claxton's Admr. v. Lexington & Big Sandy R. R. Co., 13 Bush 636.

The still later case of East Tennessee Telephone Co. v. Simms' Admr., 99 Ky. 404, was a suit to recover for the death of the decedent occurring after the adoption of our present constitution, and in the petition it was charged that the plaintiff's intestate sustained his death through the "willful, gross and reckless negligence" of the defendant. It was insisted by the defendant in that case that the suit could not be sustained unless the petition showed that the decedent left surviving him a widow or child, it having been regarded by defendant as an action brought under the provisions of the general statutes, *supra,* in force before the adoption of the present constitution, but this court held the suit to have been properly brought under section 241 of the constitution, and in defining the word "willful," as used in the petition, said: "The word 'willful,' being used manifestly as the synonym of gross." We are clearly convinced that the words "willfully and with much force," found in the amendment complained of, embrace substantially if not identically the same idea as descriptive of the acts and conduct of the flagman as do the words "gross and reckless negligence," found in the original pleading, and that the amendment complained of was in reality not necessary to perfect the plaintiff's cause of action and did not therefore materially change it. The amendment does not seek to charge the defendants with any *malicious* act of the flagman, in which case it is necessary to allege and prove that the acts of the agent complained of were committed in the course of his employment. This is the doctrine of the cases of Sullivan v. L. & N. R. R. Co., 115 Ky. 447, and Case v. Steel Coal Co., 162 Ky. 74, and other like ones.

It is here sought to recover only for the "reckless indifference of the safety of others or the public," which, according to the authorities, *supra,* is willful negligence,

and synonymous under the rule in the Simms case with gross negligence.

Section 134 of the Civil Code permits amended pleadings to be filed at any time in the furtherance of justice where they do not substantially change the claim or defense, and we do not think the provisions of that section have been violated in this case.

The grounds for the (2) contention are that the court at its regular August, 1915, term, the case being tried at the regular January, 1916, term, drew thirty names from the wheel for petit jury service for the succeeding regular January term, and at the same August, 1915, term there was an order entered calling a special term of court to convene November 15, 1915, and thirty names were drawn for petit jury service at the special term. The special term, however, was not held, but the envelope containing the names of the drawn jurors for that term was opened and the jurors summoned by the sheriff to attend the special term. In due time the sheriff summoned the names which the court had drawn for the regular January term of court, and it is this panel which the defendants moved to discharge after eighteen of them had qualified and been placed in the jury box.

Section 2244 of the Kentucky Statutes provides that "If at any special term of a circuit court to be held, grand and petit juries, or either, will be required therein, the judge of the court may, not more than ten nor less than five days before the special term is to begin, direct the clerk of the court to immediately open the list made and delivered to him at the last regular term of said court of such jury as will be required, and which direction shall be immediately complied with by the clerk by opening the said list, making a copy thereof, and delivering the copy to the sheriff, who shall summons said jurors as hereinafter provided. In the event the lists of grand and petit jurors, or either, selected for a regular term are used at a special term, as provided in this section, it shall be the duty of the judge at said special term, to draw and make up from the drum or wheel-case, in the manner provided in section 2243, other lists, instead of the ones used, for the next regular term of the court."

It will be observed that it is therein provided that if a special term is called by the court, the list of jurors which were drawn at the last regular term for use during the next regular term may be summoned for service during such special term, and that in that event, if the

jurors are used at the special term another list may be drawn by the judge for service during the succeeding regular term. The preceding section (2243) provides for the drawing of the jury from the wheel at each regular term for the succeeding one, which the court did here, but at the same term when that was done the special term was called by the judge and he drew an additional list for service during that term. In other words, the court provided a list of jurors duly and regularly drawn from the drum wheel for both the special and succeeding regular terms. Manifestly this course can in nowise prejudice the substantial rights of the litigant. Section 2244 does not forbid the course pursued by the judge below. It contemplates that the special term therein mentioned, and for which a jury is therein provided, will be called after the adjournment of the last regular term, in which case the jurors drawn for the next regular term may be summoned and serve for the special term, but when the special term is called during the regular term, we see nothing in the statute to prevent the judge from pursuing the course that he adopted, and of which complaint is made. We fully agree with the contention of counsel "that litigants have the unqualified right to demand that jurors shall be selected in the manner prescribed in the statutes," as was held by this court in the case of Louisville, Henderson & St. Louis Railway Company v. Schwab, 127 Ky. 82, and in many other cases, but this evidently means that the "manner" of empaneling the jury, as used by this court refers to the compliance with those provisions of the statute looking to the preservation of the integrity of the individual jurors and to prevent them from becoming contaminated or in anywise influenced, biased or prejudiced for or against any litigant, and that all of the safeguards contained in the law looking to the prevention of such conditions must be observed.

In this case the manner of drawing names from the wheel for the regular panel (as provided by statute) which served at the January, 1916, term, at which the case was tried, was strictly observed, and the list so drawn for the regular term contained the names of those who did serve at that term. There is no pretense that there was any opportunity for the jurors to be in anywise corrupted or influenced in any way, the only contention being that if the judge had not drawn but one list at the August, 1915, term, that list would have been

used at the November special term, at which another would have been drawn for the following regular January term. In view of the fact that the beneficial provisions of the statute looking to the preservation of the integrity of the jury were literally observed, we find no merit in this contention.

It is further insisted that the jury which tried this case was composed of those empaneled at the beginning of court for petit jury service, and that the trial was had during the fourth week of the term; that under the provisions of section 2261 of the Kentucky Statutes the court should have discharged the petit jury after the first week's service and empaneled another from names drawn from the wheel for that purpose, and we are referred to the case of C., N. O. & T. P. Ry. Co. v. Strunk's Admr., 167 Ky. 340, and many other recent ones from this court as sustaining this position. It will be readily seen, however, that the question presented and considered in those cases is entirely dissimilar to the one here, and that the doctrine of those cases has no application here.

In the cases mentioned the court had proceeded to draw a new panel at the beginning of each week of the term, and it was held that there existed no law for a second panel of the jury to be drawn after the convening of court, except one which might be drawn by the court in its discretion after the first panel shall have served as much as one week. There is nothing mandatory or obligatory upon the part of the court to draw a second panel at all, and if he should fail to do so no statute has been violated. We, therefore, conclude that defendants' second contention cannot be upheld.

Considering the (3) error complained of, it is claimed that the allegations of the petition and its amendments show that plaintiff was a trespasser, and the demurrer filed thereto should have been sustained. In support of this we are referred to many cases from this court, including those of Kentucky Highlands R. Co. v. Creal, 166 Ky. 468; I. C. R. R. Co. v. Cotter, 31 Ky. Law Rep. 679; and L. & N. R. R. Co. v. McNally, 31 Ky. Law Rep. 1357.

The limits of this opinion will not permit us to notice in detail the facts of each of those cases and to undertake to differentiate them from those of the case now under consideration. Suffice it to say that in each of them the plaintiff had not assumed the relationship of

passenger at the time he sustained his injuries, or, if so, by his own conduct he had deprived himself of such relationship, and it was held that *at the time* of his injury he was a trespasser, and under the peculiar facts of those cases a recovery could not be had.

As we have seen, it is alleged in this case that the plaintiff had gotten upon the car with the intention of becoming a passenger at the time he was thrown from it by the willful and gross negligence of the defendants' flagman in the manner set out in the pleading. This clearly shows that the plaintiff was not a trespasser, and did not come within the rule of the cases relied on. It was not, therefore, improper to overrule the demurrers filed to the petition and its amendments.

In considering objection (4) to the judgment it is necessary to make a brief statement of the facts, which are substantially these: The business part of the village of Neon is located where two Y's of the defendants' track come together, by means of which the passenger train which inflicted the injury is turned on its route from McRoberts to Whitesburg. The train is backed from McRoberts and enters upon one of the Y's at Neon. After passing over the junction point of the two Y's, the switch is thrown and it is then pulled forward on the other Y on its route to Whitesburg. There is considerable proof that many persons had been boarding the train as it pulled out from the Y to Whitesburg at about the point where the two come together. There is no depot building or ticket office at that place, although a small building is located about 400 yards further up the road, but in order to get to it one would be compelled to cross a large creek over a trestle of the railroad track, and perhaps undergo other inconveniences. But, be that as it may, on the day in question, as the train pulled out and was going at a speed of between four and six miles per hour, the plaintiff attempted to board the train, and he and some ten or more eyewitnesses state positively that he had succeeded in getting upon the lower steps at the front end of the last coach with both of his feet, and with his hands holding the grab irons, and therefore in a practically safe position; that then the flagman of the defendant attempted to board the train from the same steps and ran under the plaintiff's right arm, striking his body somewhere near the shoulder and wrenching his right hand loose from the handle-bar to which he was holding, causing him to swerve around

against the side of the car and to be thrown therefrom, resulting in his getting his leg under the train and across the rail in front of the hind trucks of the car, and it was run over, resulting in the injuries complained of. Some seven or eight witnesses introduced on behalf of the defendants testify that the flagman did not attempt to board the train while plaintiff was upon the steps, but that, on the contrary, he had already gone up the steps and into one of the cars composing the train before plaintiff attempted to board it.

As to how the accident happened, whether in the manner contended by plaintiff or in the one contended by defendants, is one over which there is a sharp conflict in the testimony, making the determination of the issue one peculiarly for the jury. If the jury found the accident to have been produced as plaintiff contends, it makes but little if any difference whether plaintiff was a trespasser or a passenger. We are rather inclined to the opinion that after he boarded the train and was safely upon it that the relationship of passenger attached (he *bona fide* intending to become a passenger on the train), although up to that time he may have been a trespasser in attempting to board the train while it was moving, and in the manner he did. If, in the effort to so board the train, he had sustained injuries, without the intervention of any acts of the flagman, there would have been room for the application of the doctrine of the cases, *supra,* but, conceding that at the time he was wrenched loose of his hold upon the grab irons, as he contends, he was a trespasser, then, under the rule laid down in a long list of cases, the company would be liable if the flagman's acts were done in the manner alleged, because no doctrine is more familiar than the one that a railroad company must exercise ordinary care to prevent injuring a trespasser after his peril is discovered, and that no unnecessary force can be used in ejecting a trespasser from the train. This will be found to be the rule in this state from the cases heretofore cited without referring to them at this time. So, in any view of the case, we are compelled to hold that the court properly overruled the motion for a directed verdict for the defendants.

5. The court gave to the jury instructions 2, 3, 4 and 5, offered by the defendants, and, also, upon its own motion, instructions A, B and C, declining to give instruction 1, offered by the defendants. Complaint is

made of the refusal of the court to give instruction 1, which the defendants offered, and in giving instructions A and B on its own motion.

Instruction 1 refused by the court told the jury, in substance, that if the plaintiff attempted to board the defendants' train while it was in motion he was a trespasser and was thereby guilty of such contributory negligence as to relieve the defendants of any duty to keep a lookout for his safety. Other instructions offered by the defendants and given by the court relieved the companies of liability if the jury should believe that the plaintiff would not have sustained his injuries, but for his effort to board the train while it was in motion, and that if the jury should believe that the injury would not have occurred but for such negligence, they should find for the defendants, even though the jury might further believe that the flagman "willfully and with much force jumped against the plaintiff, as set out in instruction number A."

Another instruction offered by the defendants and given was to the effect that if plaintiff was intoxicated and by reason thereof he failed to exercise such care for his safety as might be ordinarily expected of a sober person of ordinary prudence, that in such event the jury should find for the defendants.

Instruction A, given by the court in lieu of instruction number 1, offered by the defendants, is in these words:

"The court instructs the jury that Albert Copley, the plaintiff, had no right to board, or attempt to board, a moving train, and took upon himself the risk and hazards incident to his getting on, or attempting to get on, a moving train, and the employees of the defendant in charge of the train were under no duty to keep a lookout for persons, or for him, in attempting to board the train as plaintiff claims he did, but yet, should the jury believe and find from the evidence that plaintiff did board, and was on the steps of the car of said train while the car was in motion the defendants' flagman, agent and servant, willfully and with much force, jumped against the plaintiff while the plaintiff had hold of the grab irons, if they believe he did have hold of them, and knocked plaintiff loose therefrom and caused him to fall from the train to the ground, if they believe he did fall therefrom, and to be run over and injured by the train, they will find for the plaintiff."

Instruction B relates only to the measurement of damages, and of which we can find no criticism. It will be seen that instruction A confines the right of the plaintiff to recover solely upon the ground that defendants' flagman *willfully and forcibly* jumped against him after he was upon the steps and had hold of the grab irons. The first part of that instruction relieved the company of any duty to keep a lookout for plaintiff either as he attempted to board the train or after he got upon the steps, as testified to by him. This is substantially all that instruction No. 1, which the court refused, contained, and if there was any error in refusing to give it the error was cured by the first part of instruction A. There certainly can be no complaint of the court's action in confining plaintiff's right to recover in the latter part of instruction A for only willful (or, as we have seen, grossly negligent) acts of the flagman. If plaintiff was a passenger, the defendants owed him the highest degree of care, and if he was a trespasser, the agents and servants of the defendants owed him the duty of exercising ordinary care to prevent injuring him, after discovering his position, or to exercise ordinary care toward him in ejecting him from the train. We are convinced that the evidence abundantly shows that the flagman must have seen plaintiff's situation, because it is not stated by any witness that there was any obstruction to prevent the flagman from seeing him, and a number of witnesses testify that after plaintiff got safely upon the steps and hold of the grab irons that the flagman was near by and was looking toward him.

It will therefore be seen that the instructions are much more favorable to the defendants than the law and the facts authorized, and consequently there is no ground for defendants' criticism of them, although they might be erroneous when applied to the plaintiff's theory of the case.

Mention is made in the brief, as well as in the motion for a new trial, that the verdict is excessive; but, in view of the holding in the cases of C., N. O. & T. P. Ry. Co. v. Goode, 169 Ky. 113; Same v. Nolan, 167 Ky. 11; and East Tennessee Telephone Co. v. Jeffries, 160 Ky. 483, we deem it unnecessary to give serious consideration to this objection. The plaintiff was, at the time of his injury, 38 years of age; a stout, robust, healthy man, weighing something near 200 pounds, a plumber by occupation, and earning four dollars per day. Ver-

dicts much larger, and for less impairing injuries, will be found in the cases referred to.

Upon the whole, we have failed to discover any error prejudicial to the substantial rights of the defendants, and the judgment is affirmed.