## Standard Oil Company v. Titus.

(Decided March 26, 1920.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

1. Negligence—Duty to Invitee.—Where a terminal company was engaged in placing cars on defendant's track as directed by defendant, defendant owed to the members of the switching crew the duty to exercise ordinary care to maintain its track in a reasonably safe condition for their use.

2. Negligence—Assumption of Risk.—In view of the fact that the doctrine of assumed risk is not based entirely on contract, but grows out of the application of the maxim, "Volenti non fit injuria," there may be a voluntary assumption of the risk of a known danger which will debar one from recovering compensation in case of injury, even though he was in the exercise of due care.

3. Negligence—Assumption of Risk—Question of Law.—In an action for personal injuries by the foreman of a switching crew of a terminal railroad company engaged in switching cars on defendant's tracks, evidence examined and held that plaintiff did not assume the risk of injury from an unspiked rail as a matter of law.

4. Negligence—Unsafe Method of Doing Work—Question for Jury.—The evidence being conflicting on the question whether plaintiff adopted an unsafe method for doing the work, the question was for the jury.

5. Negligence—Injury to Invitee—Contributory Negligence—Question for Jury.—In such an action evidence considered and the question of contributory negligence held for the jury.

6. Damages—Excessive Damages.—Where plaintiff was thirty-five years of age, and his injuries resulted in the amputation of his leg eight inches below the knee, a verdict for $15,200.00 was not

excessive, in view of the high cost of living and the diminished purchasing power of a dollar.

HUMPHREY, CRAWFORD, MIDDLETON & HUMPHREY for appellant.

JOHN L. SULLIVAN, A. SCOTT BULLITT and JAMES HEMPHILL for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming

In a suit for personal injuries, plaintiff, Williard S. Titus, recovered of the defendant, the Standard Oil Company, a verdict and judgment for $15,200.00. The defendant appeals.

At the time of the accident, which occurred on March 16, 1917, the Kentucky & Indiana Terminal Railroad Company was engaged in the business of switching cars on to the private tracks of various industries surrounding the city of Louisville, and plaintiff, an experienced railroad man, was the engine foreman in charge of its switching crew. Cars consigned to the defendant were placed on its track in accordance with orders put into a small box by Droege, one of defendant's employees. On reaching the premises on the morning of the accident, plaintiff found the following order in the box: "Conductor: Place B. & O. 170916 at end of track; all cinders next; other loads after that. Droege." According to plaintiff's evidence, he reached defendant's premises about 4:30 o'clock in the morning. It was drizzling rain and was still dark. At plaintiff's direction the engineer slowly backed the cut of cars over defendant's switch. At that time the switch track was being extended from day to day, and plaintiff knew the track had not been ballasted, that the ties were simply laid on the surface of the ground, and that the ground was slippery and muddy. While the cars were being backed, two wheels of the rear truck of the leading car ran off the track for a short distance, leaving the wheels on the ties with the rear wheel of the truck near and in line with the rail from which it had dropped. As soon as the derailment occurred plaintiff got off the car on which he was riding, and went to the end of the track. He and his rear man, Howerton, found that the derailment had taken place at a point where two rails joined, and that the last rail on

the south was pushed over a fraction of an inch, or just enough to allow the wheels to be pulled back on the track the way they came off. Otherwise the last rail was in alignment with the rest of the track. On looking under the car plaintiff and Howerton found that the only wheels that were off the track were the two wheels of the rear truck on the south side, and these two wheels were still on the ties. All the other wheels, including those on the north side of the car, remained on the track. The slight spring in the south rail was no indication that anything was wrong with the track, or that the rail itself was unspiked. The derailment was only a slight one, and such as frequently occurs. The derailment occurred in a cut about five feet deep. After observing the conditions, plaintiff directed Howerton to get on the bank and signal the engineer to go ahead. At the same time plaintiff took a position a few feet behind the rear car, and between the rails. When the power was applied the last rail on the south side swung towards the north, crushing plaintiff's leg so severely that it had to be amputated eight inches below the knee. The next morning it was discovered that the rail which caused the injury had never been spiked to the ties. Plaintiff and Howerton both say they never knew that the rail was unspiked, and there was nothing in the surrounding conditions to warn them of that fact. Plaintiff says it was his duty under the circumstances to re-rail the car without sending for a wrecking crew, and he and his witnesses say that the method adopted was a safe one. On the other hand, defendant's witnesses claim that the loose rail was not a part of the track proper, but was a rail which had been left in the middle of the track the evening before, and had not been lined up. They also say that the method adopted by plaintiff for re-railing the car was improper.

Though it be true that plaintiff was not an employee of the defendant, he was the representative of the terminal company, which had the right to place cars on defendant's switch as directed by Droege. That being true, he was rightfully on defendant's premises, and defendant owed him and the other members of the switching crew the duty to exercise ordinary care to have its switch track in a reasonably safe condition for their use. Anderson & Nelson Dist. Co. v. Hair, 103 Ky. 196, 44 S. W. 658; Branham's Admr. v. Buckley, 158 Ky. 849, 166 S. W. 618. This proposition of law is not disputed,

but it is insisted that defendant was entitled to a peremptory instruction because plaintiff not only assumed the risk and adopted an unsafe method of doing the work, but was also guilty of contributory negligence. In view of the fact that the doctrine of assumed risk is not based entirely on contract, but grows out of the application of the maxim, *"Volenti non fit injuria,"* it is well settled that independently of the relation of master and servant, there may be a voluntary assumption of the risk of a known danger which will debar one from recovering compensation in case of injury, even though he was in the exercise of due care. Miner v. Connecticut River R. Co., 153 Mass. 398, 26 N. E. 994; Indiana Natural Gas & Oil Co. v. O'Brien, 160 Ind. 266, 65 N. E. 918, 66 N. E. 742; Wood v. Locke, 147 Mass. 604, 18 N. E. 578. Therefore, the question is whether plaintiff, as a matter of law, voluntarily assumed the risk of a known danger. The argument in behalf of the defendant is as follows: Plaintiff knew that the track, which had not been completed, but which was being extended from day to day, was not ballasted, that the ties were simply laid on the surface of the ground, and that the ground was slippery and muddy, and thus assumed the risk arising from the defective track. It must not be forgotten, however, that plaintiff was not injured because the ties were unballasted or the ground was slippery. If his evidence be true, the proximate cause of his injury was the unspiked condition of the loose rail. Plaintiff had the right to assume that the rail was properly spiked. It was dark when the accident occurred. He says he did not know that the rail was unspiked and there was nothing to indicate that such was its condition. That being true, we cannot say, as a matter of law, that he knew of the risk and voluntarily assumed it.

As to the contention that plaintiff adopted an unsafe method of re-railing the car, it is sufficient to say that the evidence was conflicting and the question was therefore for the jury.

Nor can we say that plaintiff was guilty of contributory negligence as a matter of law. As before stated, he had a right to act on the assumption that the rail was securely spiked. He took a position behind the car, where he would have been in no danger had the defendant performed its duty. Not knowing that the rail was unspiked, and its condition not being plainly observable,

he had no reason to anticipate that he occupied a dangerous position. At any rate, it was for the jury to say whether, in view of all the circumstances, he exercised ordinary care for his own safety.

Lastly, it. is insisted that the verdict is excessive. Plaintiff was thirty-five years of age at the time of the accident and his injuries were such that it was necessary to amputate his leg eight inches below the knee.. Since the cost of living has greatly increased and the purchasing power of a dollar is far less than it used to be, we conclude that the verdict is not excessive. L. & N. R. Co. v. Copley, 177 Ky. 171, 197 S. W. 648; Continental Coal Corporation v. Cole's Admr., 155 Ky. 139, 159 S. W. 668.

Judgment affirmed.