PAUL FERGUSON

*v.*

R. E. BALL AND COMPANY, *a Corporation, et al.*

(No. 12845)

Submitted February 10, 1970.    Decided March 24, 1970.

*Baer & Napier, Philip A. Baer,* for appellant.

*Jenkins, Schaub & Fenstermaker, John F. Wood, Jr.,* for appellees.

BERRY, JUDGE:

This appeal involves a civil action for personal injuries instituted in the Circuit Court of Cabell County by the plaintiff, Paul Ferguson, against the defendants R. E. Ball and Company, a corporation, and Robert E. Ball, an individual operating the corporation, which resulted in a jury verdict in favor of the defendants with judgment entered thereon on the 14th day of May, 1968, after which a motion to set aside the verdict and grant a new trial was overruled on December 13, 1968. The appeal and supersedeas were granted by this Court on June 23, 1969,

and the case was submitted on briefs and arguments at the January Regular Term, 1970, of this Court.

The defendants are engaged in the business of building houses for sale on property owned by the defendants and will be considered as one and referred to hereinafter as "defendant." The plaintiff was an independent contractor whose services the defendant usually obtained to do the electrical work in the houses being built, after the work on the houses had been completed to such an extent that they were ready for the wiring to be installed. The defendant had been engaged in this business for a period of about twelve years during which time the plaintiff had installed most of the electrical wiring in the buildings constructed by the defendant.

During the month of January, 1965, the defendant was constructing a house at 132 Altamont Road, Huntington, West Virginia, and when it was partially completed and ready for wiring the defendant requested the plaintiff to install the electrical wiring, and on January 19, 1965, the plaintiff came to the house in question for that purpose. The house being constructed was of a split-level design and temporary steps leading from one level to another had been placed in the house by a carpenter employed by the defendant. Three stringers upon which steps were to be constructed had been placed in position and temporary plywood treads placed on them. No risers had been placed on the stringers. The stringers had been nailed to partitions where the studdings were located and were notched at the top to rest on that level. The defendant's carpenter who constructed the steps in question did so in the same manner as he had done in other constructions erected by him during about twenty-five years he had spent doing carpenter work. There was no evidence introduced to indicate the number or the size of the nails used in the stringers to hold them up. No inspection was made of the temporary steps to ascertain their condition after they were built by the defendant.

The steps were used by various workmen to get from

one level to another, and at the time the plaintiff arrived the defendant and his carpenter were carrying flooring up the stairs to be installed in the upper level of the house.

Nothing was said to the plaintiff about the condition of the steps although he had observed the use thereof. After the plaintiff had looked over the various rooms in the house he was considering the installation of a switch in the vicinity of the steps and discussed this matter with the defendant Ball after which Ball then left the premises. The plaintiff then started up the steps to look at the wall area, and while standing on the steps two of the three stringers pulled loose and the steps collapsed, causing the plaintiff to fall from the steps on the lower level to the basement through an unfinished area, dropping some 12 or 14 feet. He fell on top of the lumber and suffered severe injuries to his left foot fracturing the heel bone or calcaneus. He was unable to work for about a year and suffered permanent loss of motion in his ankle.

After the accident the plaintiff was taken to a hospital from which he returned in a few hours to his home, but he was unable to return to the scene of the accident for about six weeks during which time the steps which had fallen had been installed permanently and enclosed in such manner so as to make it impossible to inspect them to ascertain the cause of the collapse. The only testimony by the plaintiff with regard to the possible cause of the collapse of the steps was that while he was lying on the floor after his injury the carpenter started putting more nails in the stringer which had not fallen and made a statement that "Well, this one won't fall out anyway."

It was admitted that no inspection had been made of the condition of the steps during the time they had been temporarily installed, and the carpenter stated that there was always the possibility the nails could work loose in such temporary construction. He also stated that he put the nails back in the same holes they had come out of when he replaced the stringers.

The complaint in this case merely alleges that the defendants erected the stairway and held it out to be safe, but that it was negligently erected in such manner so as to make it unsafe and a trap, and without any warning it fell. No specific acts of negligence were alleged and the complaint was apparently drawn under the theory of res ipsa loquitur. The answer of the defendant denied the allegations contained in the complaint and set up the defenses of contributory negligence and assumption of risk.

A pre-trial conference was held at which time it was stipulated that the issues to be decided by the jury were whether the defendant was guilty of negligence, and whether the plaintiff was guilty of contributory negligence and of assumption of risk. The pre-trial order which is contained in the record stated that it was to be read to the jury, and that any of the issues contained in the order not supported by the evidence would be stricken by the court on proper instruction to the jury, or on motion of either party. The theory of res ipsa loquitur was not mentioned in the pre-trial order. At the conclusion of the evidence both the plaintiff and defendant moved for a directed verdict, which was overruled by the trial court. One of the grounds relied on by the defendant for a directed verdict was that the evidence clearly supported the assumption of risk on the part of the plaintiff. The plaintiff's attorney moved the trial court to instruct the jury not to consider the issues of assumption of risk and of contributory negligence. The court sustained the motion as to the defense of contributory negligence, but clearly left the defense of assumption of risk in the case.

A request was made by plaintiff's attorney in the record that inasmuch as the issues contained in the pre-trial order were read to the jury, there should be an instruction to it if any issue was withdrawn, as provided in the order. The trial court stated it would instruct the jury at the proper time to disregard the issue of contributory negligence. After the instructions were read to the jury an additional instruction was given by the trial court which

was that the question of contributory negligence was not an issue in the case and that the jury should disregard that issue mentioned in the pre-trial order.

No further instructions were given with regard to the defenses of contributory negligence and of assumption of risk and no instruction was given whatsoever on the doctrine of res ipsa loquitur.

The assignments of error relied on by the plaintiff are: (1) The overruling of the plaintiff's motion for a directed verdict, (2) the overruling of the plaintiff's motion to strike the defense of assumption of risk, (3) the refusal to include in the plaintiff's instruction the ad damnum clause, (4) the giving of instructions 3 and 4 offered by the defendant, and, (5) the overruling of the plaintiff's motion to set aside the verdict and to grant to him a new trial.

The assignments of error with regard to the court's elimination of the ad damnum clause or the amount sued for and the giving of instruction 4 offered by the defendant are not material on this appeal. Both of these alleged errors deal with damages and the jury's verdict was for the defendant. Therefore, no damages are involved. Then, too, the purpose of the ad damnum clause, or the amount sued for, as contained in the complaint, is merely to inform the defendant of the amount of damages demanded and is not considered proof of any injury or of liability. *Jenkins* v. *Montgomery*, 69 W. Va. 795, 72 S. E. 1087; *Natale* v. *Great Atlantic & Pacific Tea Co.*, 186 N.Y.S. 2d 795, 8 A.D.2d 781. Instruction number four merely stated that damages could not be awarded on speculation or guess work, which, of course, is proper. *Ripley* v. *Whitten Transfer Co.*, 135 W. Va. 419, 63 S. E.2d 626; *Konchesky* v. *Groves and Sons Co.*, 148 W. Va. 411, 135 S. E.2d 299; *Spencer* v. *Steinbrecher*, 152 W. Va. 490, 164 S. E.2d 710.

Instruction number three offered by the defendant and given by the court reads as follows: "The Court instructs the jury that even if you find the stairway was defective and as a result fell down so as to injure the plaintiff, the

defendant was not negligent unless he knew or reasonably should have known that the stairway was defective."

The plaintiff's reason for the objection to this instruction was because the doctrine of res ipsa loquitur was applicable and because it eliminated any duty on the part of the defendant to inspect the condition of the steps.

It is true that this instruction does not comply with the doctrine of res ipsa loquitur, but it was the duty of the plaintiff to ask for an instruction on the theory of res ipsa loquitur. Although there is a split of authority as to whether an instruction on this doctrine should be given, the better procedure is to instruct the jury on this theory when it is involved in a case. 65A C.J.S., Negligence, §282. While a party does not have to offer instructions, it would appear in this instance that the plaintiff should have offered an instruction on the doctrine of res ipsa loquitur after stating that he relied on it since if he does not he is in no position to complain of the absence of an instruction. *Scales* v. *Majestic Steam Laundry,* 114 W. Va. 355, 171 S. E. 899. Then, too, there should be a relative continuity between the allegations in the complaint, the evidence, and the instructions in order that the jury may understand the theory relied on by the parties. *McCabe* v. *The City of Parkersburg,* 138 W. Va. 830, 79 S. E.2d 87. However, this instruction is defective inasmuch as it ignores the duty of the defendant to use ordinary or reasonable care to keep the premises safe for the plaintiff, and it would appear to contain only half of the duty owed by the defendant to the plaintiff. 65 C.J.S., Negligence, §63 [112].

Under the facts of the case at bar there is no question but that the plaintiff was an invitee of the defendant, the owner of the premises in question, and the defendant owed him the duty of using ordinary care to avoid any injury to him. This principle is clearly stated in the case of *Roberts* v. *Kelly Axe & Tool Co.,* 107 W. Va. 236, 148 S. E. 70, wherein it was held by this Court that: "It is hardly necessary to cite authorities for the propositions that an independent contractor at work on premises where his

contract requires him to be is an invitee, and that while thus engaged he is entitled to the protection of ordinary care on the part of the owner or occupier of the premises, and that such invitee must be furnished a reasonably safe place in which to work." This principle was adhered to by this Court as late as 1967 in the case of *Chenoweth* v. *Settle Engineers, Inc.*, 151 W. Va. 830, 156 S. E.2d 297.

Although no instruction was offered by either the plaintiff or defendant with regard to the defense of assumption of risk, it is clear that this issue was submitted to the jury when the pre-trial order containing this issue was read to the jury and it was told that if it was not supported by the evidence it would be so instructed. It is clear that the defendant relied on this defense in the statements to the court by counsel for the defendant. It is clear that counsel for the plaintiff moved to have the jury instructed that the defense of assumption of risk was not applicable and it is also clear that the court overruled this motion and did not so instruct the jury, thus leaving the issue to be considered by the jury. This action was reversible error. The facts in the case presented here do not warrant the defense of assumption of risk, because the plaintiff did not expose himself to any danger with the knowledge or appreciation of such danger. This question is adequately answered in the case of *Davis* v. *Fire Creek Fuel Co.*, 144 W. Va. 537, 109 S. E.2d 144, wherein this Court quoted from the case of *Matthews* v. *Gas Co.*, 138 W. Va. 639, 77 S. E.2d 180, in the following language:

> " 'The doctrine of assumed or incurred risk is based upon the existence of a factual situation in which the act of the defendant alone creates the danger and causes the injury, and the plaintiff voluntarily exposes himself to the danger with full knowledge and appreciation of its existence. 65 C.J.S., Negligence, Section 174; 62 C. J. 1102; *Gill* v. *Arthur*, 69 Ohio App. 386, 43 N. E.2d 894; *Masters* v. *New York Central Railroad Company*, 147 Ohio St. 293, 70 N. E.2d 898, certiorari denied 331 U. S. 836, 67 S. Ct. 1519, 91 L. Ed. 1848, re-

hearing denied 332 U. S. 786, 68 S. Ct. 33, 92 L. Ed. 369; *Ringling Bros. Barnum & Bailey Combined Shows, Inc.* v. *Olvera,* 9th Cir., 119 F. 2d 584; *Standard Oil Company* v. *Titus,* 187 Ky. 560, 219 S. W. 1077; *Cincinnati, New Orleans and Texas Pacific Railway Company* v. *Goldston,* 156 Ky. 410, 161 S. W. 246; *Fitzgerald* v. *Connecticut River Paper Company,* 155 Mass. 155, 29 N. E. 464, 31 Am. St. Rep. 537. The doctrine has been stated in these words: "A person, who brings about a condition or situation obviously dangerous to himself by voluntarily exposing himself to a hazard created by another, assumes the risk of injury so created and thereby relieves such other of legal responsibility for an injury resulting from such exposures." Point 4, syllabus, *Masters* v. *New York Central Railroad Company,* 147 Ohio St. 293, 70 N. E.2d 898, certiorari denied 331 U. S. 836, 67 S. Ct. 1519, 91 L. Ed. 1848, rehearing denied 332 U. S. 786, 68 S. Ct. 33, 92 L. Ed. 369.' "

It can be clearly seen from the above statement that the defense of assumption of risk is not applicable to the facts in the case at bar, because it is clear from the evidence that the plaintiff did not know nor had he any appreciation of the danger which existed in the construction of the temporary steps, and such issue should not have been submitted to the jury.

For the reasons stated herein, the verdict of the jury is set aside, the judgment of the Circuit Court of Cabell County is reversed and the plaintiff is granted a new trial.

> *Verdict set aside; judgment reversed; new trial awarded to plaintiff.*